(48 South. 319.)

No. 17,105.

MURPHY v. ST. LOUIS CYPRESS CO.,
Limited.

(Nov. 30, 1908.   Rehearing Denied Feb. 15, 1909.)

SALES (§ 359*)—ACTION FOR PRICE—EVIDENCE.
   This case involves only questions of fact.
   [Ed. Note.—For other cases, see Sales, Cent.
Dig. § 1056; Dec. Dig. § 359.*]

(Syllabus by the Court.)

Appeal from Twenty-First Judicial District Court, Parish of Iberville; Calvin Kendrick Schwing, Judge.

Action by John H. Murphy against the St. Louis Cypress Company, Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

Edward Blunt Talbot, for appellant. Clarence Samuel Hebert and Alex. Hebert, for appellee.

LAND, J.   Plaintiff sued for a balance of $4,075.56, with legal interest from June 29, 1905, alleged to be due on the purchase price of certain machinery and for erection of the same pursuant to contract.

The defendant for answer pleaded the general issue, and admitted having contracted with the plaintiff for the furnishing, delivery, and erection at Houma, Terrebonne parish, of boilers, etc., for its sawmill, according to specifications, for the total price of $6,300, payable one-half on delivery of the machinery and the balance on the erection thereof subject to discount of 1 per cent. on cash payment. The answer further avers that on delivery and before inspection the respondent paid one-half of the purchase price, less said discount and certain charges and expenses due by plaintiff for cost of erection, but that on inspection certain parts of said machinery were found to be defective and not in accordance with the specifications; that plaintiff, on being notified, refused to replace said defective parts; and that respondent was compelled to do so at a cost of $1,553.60, leaving a balance due plaintiff of $1,143.60.

The case was tried, and there was judgment in favor of the plaintiff for a balance of $2,594.87, with legal interest from June 29, 1905, and costs.

The defendant has appealed, and plaintiff for answer has prayed that the judgment be so amended as to allow him the full amount claimed in the petition.

It appears from the petition and documents annexed that there were two sets of specifications, and it is alleged that in the second it was "stated in error that petitioner's original agreement called for the erection of said machinery by him." The petition alleges that plaintiff offered to furnish and deliver the machinery called for in the original specifications f. o. b. New Orleans for $6,300, and this offer was verbally accepted on June 8, 1904, by the defendant. It is further alleged that subsequently it was agreed to make certain changes in the original specifications, and that the same were finally reduced to writing on or about October 31, 1904, as shown by the second set of specifications annexed to the petition. The two sets differ materially. In the second a heavy Corliss engine, heater, and pump were omitted, and these significant words were added: "Boiler and stack to be set up by the contractor." As we appreciate the evidence, the contract sued on was based entirely on the second specifications, and the delivery was to be f. o. b. Houma. The allegation of error is not made out. The two sets of specifications were furnished to plaintiff and several other dealers in machinery, two of whom at once noticed that the second set imposed on the contractor all the expenses of erection. We do not see how a business man of ordinary prudence could bid on specifications without carefully reading every clause therein. The very account sued on shows that the defendant was credited with cash and material furnished the plaintiff's foreman while engaged in

erecting the machinery. The charging back of the same items seems to have been an afterthought.

We concur in the conclusion of the trial judge that the plaintiff was not entitled to recover anything for the cost of erecting the machinery.

As to the boiler tubes the specifications did not call for any particular test, and the inspector could only see that they were charcoal iron tubes in apparent good condition. The boilers were tested as a whole and found satisfactory. The specifications called for "tubes of best lap-welded charcoal iron." Defendant's contention is that the tubes furnished did not come up to the standard of the specifications. These tubes were manufactured by the Monongahela Tube Company, which made but one grade of standard charcoal iron tubes. The defendant sent a sample from one of the tubes to the Monongahela Company to be tested. Such test was made by the Pittsburg testing laboratory on two pieces cut from the sample. One showed a tensile strength of 50,100 pounds per square inch, and the other a tensile strength of 49,550 pounds per square inch, indicating a good, strong quality of iron, up to the grade of standard charcoal tubes. Four pieces of tube were tested by two professors of Tulane, who reported that they did not represent the best grade of lap-welded charcoal iron, as their average tensile strength with the grain was only 45,745 pounds. These tests prove nothing as to the very large number of tubes not examined by the experts. The reports show marked differences of quality in the pieces examined. A laboratory test of all the tubes was impracticable. There was no agreement as to the samples to be tested. They were selected by the defendant without consulting the plaintiff. We are satisfied from the evidence that the tubes were up to the standard of best charcoal iron tubes in the commercial sense of the term.

The item of $58.45 for guy posts is not claimed in the answer, and is not included in the specifications which stop at bands on the stack for guy fastenings. If guy wires and posts were also intended, why were they not included in the detailed specifications? The fact that the defendant had the materials on hand may account for their omission.

The item of $113 for defective hoppers is claimed in the answer and was properly allowed, as those furnished were not according to either the specifications or blue print.

There remains to be considered an item of $179.30, allowed to the plaintiff for extra work and material in the matter of smoke boxes. Defendant's contention is that the smoke boxes originally furnished were too small, and did not accord with the specifications as to the area of the breeching, which was to be 20 to 30 per cent. greater than the tube area of one boiler at the small end. The defendant's manager testified that a portion of the smoke boxes were too small, and were even smaller than the area of the tubes, and consequently choked the draught. It is admitted that four new smoke boxes were substituted for the four which were furnished and found to be unsuitable. Those first furnished were according to a blue print which was sent to and approved by the defendant company. Defendant now argues that the blue print did not accord with the specifications. Admitting the correctness of this proposition, for the sake of argument, the defendant nevertheless accepted the blue print as a correct construction of the specifications, or as a modification of the same, and cannot be heard to complain that the blue print differed from the specifications.

Judgment affirmed.